No. 24,306.

H. J. DAVIS et al., *Appellants*, v. T. M. DEAL, THE FIRST NATIONAL BANK OF ELKHART, et al., *Appellees*.

SYLLABUS BY THE COURT.

1. RESCISSION OF CONTRACT—*Cancellation of Note, Mortgage and Deed— —Ground of Fraud—Findings and Judgment Against Nonanswering Defendant—Not Binding on Answering Defendant*. In a suit to rescind a contract and to cancel certain notes, mortgage and deed on the ground of fraud, against two defendants, one of them defaulted and the court made a general finding and rendered judgment against him in favor of the plaintiff, *held*, the answering defendant is not bound by such finding and judgment.

2. SAME—*Proof Required to Make Case Against Answering Defendant*. In such a situation before the plaintiff is entitled to relief against the answering defendant he must establish the allegations of his petition by proof of the same character and to the same degree as though each of the defendants had answered and was defending.

Appeal from Morton district court; CHARLES E. VANCE, judge. Opinion filed January 12, 1924. Affirmed.

*Bennett R. Wheeler, S. M. Brewster, John L. Hunt,* all of Topeka, and *G. H. Terrill, of Elkhart,* for the appellants.

*S. B. Amidon, S. A. Buckland, H. W. Hart,* and *Glenn Porter,* all of Wichita, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This is a suit by H. J. Davis and others to rescind certain contracts and cancel certain notes, mortgage and deed on the ground of fraud, brought against F. P. Doerr and wife and T. M. Deal. It was tried to the court. Doerr and wife defaulted and judgment was rendered in favor of plaintiffs against them. Deal, by answer, denied the charges of fraud, and by cross petition sought to enforce the instruments attempted to be set aside, and obtained personal judgment against the plaintiffs and Doerr and wife on the notes, and decree foreclosing the mortgage. The plaintiffs have appealed.

In 1920 F. P. Doerr was the owner of a business property in Elkhart on which he had erected a two-story building, the first floor of which he equipped with furniture and fixtures and used as a billiard room and "recreation parlor"; the second floor was to be used for office rooms. Evidently he had started this enterprise with little capital. There was a mortgage of $12,000 on the real property to the Railroad Building & Loan Association of Newton. He was indebted to a bank at Elkhart about $8,400. He had bought the pool tables, cash register, player piano and other fixtures and equipment on payments, the title remaining in the sellers, and on which there were balances due to be paid in monthly payments. He was indebted to T. M. Deal, from whom he had bought most of the material for the building, and to other creditors in sums aggregating about $22,000. Mr. Deal and other creditors had commenced involuntary bankruptcy proceedings against him in the federal court at Wichita and Mr. Garrison of Wichita had been appointed receiver in the bankruptcy proceedings. Mr. John L. Gleason, an attorney, at that time of Oklahoma but now of Wichita, was representing Mr. Doerr. Mr. Doerr had a good business, evidently thought it would pay out if he could have time, and asked some of his friends to assist him in getting the necessary time by lending to him their credit. A conference for that purpose was held at the First National Bank at Elkhart on September 8, 1920. There were present Mr. Doerr and his attorney, Mr. Gleason; Mr. Garrison,

receiver in bankruptcy, representing the general creditors; Mr. Marshall, cashier of the bank, and plaintiffs herein, H. J. Davis, W. H. Self, B. W. Miller, J. A. Swan, and H. B. Hamilton. Mr. T. M. Deal was not present.

At this conference there was quite a thorough discussion of Mr. Doerr's indebtedness and the state of his business. His "recreation parlor" was having a cash income of about $50 per day. The office rooms on the second floor, then not finished, could be completed with little expense and would rent for $360 per month. Mr. Doerr, or Mr. Gleason for him, proposed to settle his indebtedness by arranging to pay 90 cents on the dollar and Mr. Garrison and Mr. Marshall accepted that proposition. Since Mr. Deal of the general creditors had the largest sum due him it was suggested that notes be made to him for 90 per cent of the indebtedness and that he settle with the other creditors, and this was agreed to. Notes were to be made to the bank for the amount due it. As a result of this conference the following instruments were executed at that time: (a) Mr. Doerr and wife executed to plaintiffs a general warranty deed for his business property in Elkhart, subject only to the $12,000 mortgage to the Railroad Building & Loan Association of Newton; (b) a written contract between plaintiffs as party of the first part and F. P. Doerr as party of the second part, which recited that he had sold and conveyed the real property in fee simple to plaintiffs, subject only to the mortgage of $12,000, which conveyance was "intended to be an absolute conveyance of all the right, title and equity of redemption" of the grantors, and further by a bill of sale of the same date sold and transferred to plaintiffs the pool and billiard tables and all furniture and equipment and merchandise then on hand, "which sale was and is an absolute sale and not a mortgage or other security for debt." It was then provided that plaintiffs would employ Doerr to conduct the business at a salary of $45 per week and in accordance with certain rules embodied in the contract and specifically under the supervision of H. J. Davis, acting for the plaintiffs, and it was provided that if Doerr should remain in the employ of the plaintiffs he should have an option to purchase the building, furniture, and fixtures from the plaintiffs at any time within twenty months at the price of $27,800. A record was to be kept of all the income and expenses, and in the event Doerr exercised the option to repurchase he should have credit on the purchase

price for all the net income from the property, less payments made on furniture and fixtures, and money paid to complete the building, and provision was made to terminate the option in the event Doerr did not continue in the employ of plaintiffs. (c) The plaintiffs executed three notes to the First National Bank of Elkhart aggregating $7,650, which took up Doerr's indebtedness to that bank. (d) Plaintiffs executed two notes to T. M. Deal, aggregating $19,-918.72, being 90 per cent of the claims represented by general creditors. One of these notes was for $3,500, payable in monthly installments of $750 each. Because some of the creditors were anxious to have a payment upon their indebtedness, it was agreed that this note should be immediately sold to the First National Bank and the proceeds disbursed among the creditors, and this was done. The other note executed to T. M. Deal was nonnegotiable in form, was for $16,418.72, payable in monthly payments, ten of the payments to be of $1,250 each, and three of them for $1,306.24 each. This note drew interest at the rate of 8 per cent per annum, the interest payable fifteen months from date. (e) The plaintiffs executed to T. M. Deal a mortgage upon the real property which had been conveyed to them by Doerr and wife to secure the payment of the notes mentioned in (d), which mortgage recited that it was subject to one mortgage of $12,000 in favor of the Railroad Building & Loan Association. The wives of plaintiffs did not sign this mortgage. The parties contemplated that the income from the business and rentals would pay these notes as they matured, but for fear that might be insufficient, an additional instrument was drawn, (f), being an agreement between T. M. Deal, as the first party, and the plaintiffs herein as the second party, which recited the giving of these notes and the mortgage above spoken of, (d) and (e), and provided "said first party agrees that if one-half of the principal of each of said notes is paid on or before the date of its maturity, then no default shall be declared under the terms and conditions of said mortgage, until sixty (60) days after the maturity of the last of said notes."

Mr. Deal not being present, though Mr. Garrison had power of attorney to represent him, it was not known for sure whether this arrangement would be satisfactory to him. The papers executed were placed in an envelope, left with Mr. Marshall at the bank until Mr. Deal, who lived at Wichita, could be advised of this arrangement and approve the same.

It seems that Mr. Deal was not satisfied with the form in which the papers were prepared, though he did sign the instrument (f) above mentioned. So, instead of recording the deed executed by Doerr and wife to the plaintiffs on September 8 and the mortgage executed by plaintiffs to Deal on that date, Mr. Deal had Gleason procure for him a mortgage executed by Doerr and wife to him to secure the two notes aggregating $19,918.72 and had Doerr execute a deed to the plaintiffs for the Elkhart property subject to two mortgages, one of $12,000 to the Railroad Building & Loan Association at Newton, and a second mortgage of $19,918.72 to T. M. Deal. These instruments, and their acknowledgments, bore the date of September 8, but were actually executed and acknowledged about September 20. Deal had this mortgage and deed recorded and sent the deed to plaintiffs.

Plaintiffs took possession of the Elkhart property October 21, and on November 28 received by mail the deed executed by Doerr and wife to them, not the one executed at the conference September 8, subject to one mortgage, but the one executed later and subject to the two mortgages.

This suit was filed December 7. In the petition it was alleged that the contract and notes executed by plaintiffs on September 8 were induced by fraudulent representations and concealments in that Doerr at that time represented to them that the notes then executed by plaintiffs included all of his indebtedness except that represented by the $12,000 mortgage on the property, when in truth and in fact it did not include twelve to fifteen thousand dollars indebtedness represented by the title retainer notes upon the furniture and fixtures, and that such false representations were made by Doerr for the purpose of deceiving and defrauding plaintiffs, and did, in fact, deceive and defraud them, and further that the alterations and substitutions in the deeds, notes and mortgages above mentioned were made by the defendants Doerr and Deal after the original instruments had been signed by plaintiffs and were out of their possession, and without the knowledge and consent of plaintiffs or any of them, and were made with the intention of deceiving these plaintiffs, and that in all such fraudulent representations and transactions the defendants were acting together and in collusion, and that each had knowledge of and participated in the fraudulent acts alleged. They tendered into court a quitclaim deed for the Elkhart

Davis v. Deal.

property and tendered back all the personal property and all the moneys which had come into their hands by reason of having taken possession of the property and asked to have the deed to them set aside and the notes and contracts executed by them canceled and set aside.

The defendant Deal answered that he had no knowledge of the negotiations leading up to the execution of the agreement between the plaintiffs and defendant Doerr whereby Doerr agreed to convey the property to plaintiffs. He admitted the execution of the agreement (*f*) made by him as to the extending of time of the payment of the notes and averred that at the time he did so Mr. Gleason was representing Doerr, the First National Bank of Elkhart, and plaintiffs, as their attorney and agent; that such attorney and agent delivered the instruments to him and that he was duly authorized by the plaintiffs to do so and that in accepting them he relied upon the representations of plaintiffs through their agent, and that the execution of the instruments after September 8 was by said Gleason as representing the plaintiffs as well as Doerr and said bank, and by way of cross petition he set up the note for $16,418.72, asked judgment thereon as against the plaintiffs and Doerr and wife and for the foreclosure of the mortgage executed by Doerr and wife to secure the payment of the note. Plaintiffs' reply denied the new matter in the answer and specifically denied that Gleason was at any time their agent or attorney or in any way acted for them.

Upon the trial no special findings were made, but the journal entry recites:

"That all of the allegations in the plaintiffs' petition as to the defendant, Doerr are true and that the plaintiffs are entitled to a judgment of rescission against the said F. P. Doerr as prayed for in their petition, but that said plaintiffs should not recover in this action against the defendant, Deal and that said Deal should have judgment against the plaintiffs for his costs. . . ."

The court then rendered judgment in favor of Deal against plaintiffs and Doerr and wife for the amount of the note set up in the cross petition and for foreclosure of the mortgage.

Plaintiffs appeal and contend that the finding and judgment of the trial court that all of the allegations of the plaintiffs' petition as to the defendant Doerr are true and that plaintiffs are entitled to a judgment of rescission against him as prayed for, must, from the very nature of things, be such a finding as to entitle plaintiffs to

rescind as against Deal; that it is in effect a finding that at the meeting of September 8 Doerr falsely represented that the notes executed by plaintiffs included all the indebtedness of Doerr except that represented by the $12,000 mortgage and included the amount still due upon the furniture and fixtures and that this matter was discussed and thoroughly understood by all parties; that the finding is also equivalent to a finding that Doerr and his wife, at the instigation of Mr. Deal and without the knowledge of plaintiffs, at some time later than September 8, executed a mortgage to Deal on the Elkhart property for $19,918.72 and also executed a deed to these plaintiffs subject to the two mortgages, and that these instruments were incorrectly dated so as to purport to have been executed on the same day of their conference and that these things were done for the purpose of defrauding these plaintiffs and were done by Doerr in collusion with Deal. Appellants' contention cannot be sustained.

In *Frow v. De La Vega*, 82 U. S. 552, it was said:

"If one of several defendants to a bill making a joint charge of conspiracy and fraud, make default, his default and a formal decree *pro confesso* may be entered, but no final decree on the merits until the case is disposed of with regard to the other defendants. The defaulting defendant is simply out of court and can take no farther part in the cause." (Syl. ¶ 2.)

In 21 C. J. 793, the rule is thus stated:

"The default of one defendant does not entitle plaintiff to take the allegations of the bill as true as against a defendant who is not in default."

And at pages 801 and 802 it was said:

"Where defendants are united in interest, a final decree should not be taken before the case is in condition for decree as to all. . . . Where plaintiff's claim against several defendants is based on a common ground, which is put in issue by some of defendants, he must prove his claim before he can recover even against the defaulting defendants. In such case a successful defense by an answering defendant inures to the benefit even of those in default. . . . Where the interests of defendants are separate, the answering defendant has no right to be heard as to the form of the decree against the defaulting defendant, . . ."

Many authorities are cited in support of the text; we have found none to the contrary. The rule is fundamentally sound and we do not hesitate to follow it.

Upon the two points relied upon by plaintiffs: First, that it was falsely represented to them that the notes they executed included the twelve to fifteen thousand dollars unpaid on furniture and fixtures,

Davis v. Deal.

and second, that the mortgage to Deal and deed from Doerr and wife to them were changed without their knowledge or consent, there was conflicting testimony. Each of the plaintiffs testified in substance that at the conference September 8, it was represented to them by Mr. Doerr and his attorney that Doerr's total indebtedness was about $40,000; being about $12,000 to the Railroad Building & Loan Association, $8,000 to the bank, and $20,000 to general creditors, which they understood to include the amount unpaid on furniture and fixtures. Mr. Garrison and Mr. Gleason testified that at the conference they had and showed to plaintiffs a list of the general creditors, with names and amounts due each, aggregating about $22,000 (the amount due Mr. Deal was $20,947.60). These were to be discounted 10 per cent and notes made to Mr. Deal. That Doerr's indebtedness to the bank, about $8,500, to the Building & Loan Association, $12,000, and the amount to be paid on furniture and fixtures, about $12,000, making a total indebtedness of about $52,000, were all discussed with plaintiffs, and that it was specifically understood that the amount to be paid on furniture and fixtures was not included in the notes there executed, and provision was made, in the contract between plaintiffs and Doerr, (b), for making these payments out of the proceeds of the business and accounting for them as expense. On the second point plaintiffs testified in substance that all the papers executed September 8 were left at the bank in escrow, to be delivered only in the event they were approved by Mr. Deal. If not approved they were not to be effective, and that no authority was given to anyone to substitute other instruments for any of them. The testimony of Garrison, Gleason and Marshall was to the effect that the papers were left at the bank subject to Mr. Gleason's order; that Mr. Gleason told plaintiffs he thought the mortgage executed by them without their wives joining was good, but that Mr. Deal's attorney might not think so, and might require the mortgage to be executed by Doerr and wife and the deed to plaintiffs subject thereto, in which event Mr. Gleason had authority to have such instruments executed and substituted, and this was done. Hence, the trial court had substantial evidence to support the finding and judgment against plaintiffs and in favor of Deal. From which it follows that the judgment must be affirmed.